LESLIE SALT CO., a Delaware Corporation, Plaintiff,

v.

Robert F. FROEHLKE, Secretary of the Army, et al., Defendants.

No. 73 2294 WTS.

United States District Court,
N. D. California.

Dec. 9, 1974.

Edgar B. Washburn, Landels, Ripley & Diamond, San Francisco, Cal., for plaintiff.

John D. Hoffman, Sierra Club Legal Defense Fund, Inc. San Francisco, Cal., for third party defendants.

David E. Golay, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is an action for declaratory and injunctive relief, brought by the Leslie Salt Co., an owner of certain property along the San Mateo, Santa Clara and Alameda County shorelines of San Francisco Bay, against the Secretary of the Army; the Chief of Engineers, United States Army Corps of Engineers; and the District Engineer of the Corps, San Francisco District, South Pacific Region (hereinafter the Corps) for a declaratory judgment that the Corps' assertion of jurisdiction shoreward beyond the mean high water (MHW) line is unlawful and unconstitutional and that plaintiff's property above the MHW line does not constitute "navigable waters of the United States," and for a permanent injunction restraining the Corps from requiring permit applications pursuant to the Rivers and Harbors Act of 1899 (33 U.S.C. § 401 et seq.) for work being done on plaintiff's land above the MHW line.

The action is now before the Court on the Corps' motion for summary judgment upon a record consisting of the complaint, including certain exhibits attached thereto and incorporated by reference; also certain matters outside the pleading.[1]

The complaint alleges, in substance and effect, that plaintiff owns approximately 35,000 acres of shoreline proper-

---

1. Matters outside the pleading include affidavits of Washburn, Thinggaard, Collet, and O'Halloran on behalf of plaintiff; also certain authenticated exhibits attached to plaintiff's opposition memorandum; also one unauthenticated exhibit attached to plaintiff's second supplemental memorandum in opposition to the motion; also defendant's affidavit of Lamm; also certain unauthenticated exhibits attached to defendant's memorandum in support of the motion.

ty in question; that all this property was originally marshland and was originally conveyed by the United States of America to the State of California by virtue of the Arkansas Swamp Act of 1850 (43 U.S.C. §§ 982, 983); that the property was subsequently patented by the State to plaintiff's predecessors in interest; that the property has been reclaimed for agricultural, salt production and other purposes and that the daily performance of new work behind diked areas is essential to the operation of plaintiff's salt production business; that the land on which said activities are being conducted lies landward beyond the MHW line to which the Corps asserts jurisdiction; that the Corps has published two Public Notices (No. 71–22—June 11, 1971, and No. 71–22(a) —January 18, 1972) and has amended a Regulation (33 CFR 209.260—September, 1972) redefining and extending the Corps' regulatory jurisdiction over "navigable waters of the United States" and has in effect unlawfully asserted Corps jurisdiction under the Rivers and Harbors Act of 1899, supra, along the Pacific Coast beyond the MHW line and up to the *"mean higher high water line"* (MHHW); that the Corps has informed plaintiff and its lessees orally and in writing that the Corps claims regulatory jurisdiction and requires permits for work in all areas bayward of the MHHW line.

In order to understand the contentions of the parties and the issues in this case it is necessary to explain at the very outset the meaning of these two terms, i. e., *"mean high water"* (MHW) and *"mean higher high water"* (MHHW):

Each day (more precisely, within every 24.8 hours) both coasts of the United States experience two high tides, one of which rises to a relatively higher shoreward level than the other. The mean high water (MHW) line is the average of both high tides over a period of 19 years; the mean higher high water (MHHW) line is the average of only the higher of the two high tides for the same period of time. *Tide and Current Glossary*, U.S. Department of Commerce, U.S. Coast and Geodetic Survey, Special Pub. No. 228 (1949)).

In support of its motion for summary judgment defendants contend:

(1) That there is no "justiciable issue," no "actual controversy," before the Court; that there has been no "final agency action," and that plaintiff has failed to exhaust available administrative remedies.

(2) That the Corps has, as a matter of law, jurisdiction under the Rivers and Harbors Act of 1899 which deals with obstructions to navigation, including discharge of refuse, and also under Section 404 (33 U.S.C. § 1344) of the Federal Water Pollution Control Act (hereinafter FWPCA) to require permits for discharge of dredged or fill materials into areas beyond the MHW line and up to the MHHW line on the Pacific Coast.

Deferring consideration of the issues of "actual controversy," "final agency action" and "available administrative remedies," we will first consider the pending case on the merits since, if our ruling on the merits is in favor of defendants and adverse to plaintiff, it may not be necessary to pass upon those issues.[2]

---

2. The record bearing on these issues of "actual controversy," "final agency action" and "available administrative remedies" consists of the Public Notices and Regulation referred to in plaintiff's complaint; also certain matters outside the pleadings (See Note 1) i. e., affidavits and exhibits showing in substance that on May 31, 1972, the Corps notified plaintiff that one of plaintiff's dredging operations in San Francisco Bay was being conducted without a permit as re-

quired by 33 U.S.C. § 403 of the Rivers and Harbors Act of 1899, and directed plaintiff to discontinue the dredging operation until a permit had been obtained. On March 26, 1973, the Corps wrote plaintiff's lessee that a permit was required for certain fill activities being conducted below the MHHW line and warned lessee of possible legal action. On September 17, 1973, the Corps, citing its Public Notices above mentioned, informed plaintiff that plaintiff's fill operation on a

Insofar as the motion for summary judgment is based on the Corps' assertion of its jurisdiction beyond the MHW line, plaintiff contends that neither the Rivers and Harbors Act of 1899 nor the FWPCA authorizes the extension of the Corps' Pacific Coast regulatory jurisdiction beyond the MHW line; that any such extension of the Corps' regulatory jurisdiction beyond the MHW line would be unconstitutional; that in any event, even if the FWPCA extends the Corps' jurisdiction beyond the MHW line, a factual issue remains as to whether plaintiff's property is within "the waters of the United States" as that term is used in the FWPCA; also, that since plaintiff's land was originally conveyed by the United States to the State of California as swamp and overflowed land under the Arkansas Swamp Act of 1850, it is subject to federal regulatory jurisdiction no further shoreward than the MHW line under a holding in Leovy v. United States, 177 U.S. 621, 20 S.Ct. 797, 44 L.Ed. 914 (1900); also that the Corps has surrendered its jurisdiction over areas of plaintiff's property beyond the MHW line by failing to timely assert such jurisdiction.

The regulatory jurisdiction of the Army Corps of Engineers was established in 1899 by the Rivers and Harbors Act of that year, authorizing (33 U.S.C. §§ 401, 403, 404, 407) the Corps to exercise regulatory control over specified activities in "any navigable water of the United States." The Congress did not then define "navigable waters," but the "mean of the high water" (MHW) has been established by case law as the extent of the Corps' jurisdiction over tidal waters under the Rivers and Harbors Act of 1899. United States v. Stoeco Homes, Inc., 6 ERC 1757, 1765–1766 (3d Cir. March 14, 1974); United States v. Cannon, 363 F.Supp. 1045 (D.C.Del.1973); United States v. Lewis, 355 F.Supp. 1132 (S.D.Ga.1973).

However, in 1948, the Congress enacted the Federal Water Pollution Control Act (FWPCA) (33 U.S.C. § 466 et seq.) and in this Act, by amendment of 1972 (33 U.S.C. Sec. 1251 et seq., see Section 1362(7)), the Congress for the first time defined "navigable waters," for the purposes of the Act as "waters of the United States, including the territorial seas."

The FWPCA, as amended, establishes a comprehensive program of water pollution research and control in order to "restore and maintain the chemical, physical, and biologial integrity of the Nation's waters" and, among other things, declares as a national goal, the elimination of the discharge of pollutants into navigable waters by the year 1985 (33 U.S.C. § 1251(a)); subject to certain limited exceptions, the FWPCA makes unlawful "the discharge of any pollutant by any person" (33 U.S.C. § 1311(a)); the term "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source," and the term "pollutant" is defined to include such materials as dredged spoil rock, sand, and in-

certain refuse disposal site in Alameda County was being conducted without a permit and was, therefore, in violation of 33 U. S.C. § 403 of the Rivers and Harbors Act of 1899 and 33 U.S.C. § 1344 of the FWPCA. On November 5, 1973, the Corps instructed plaintiff to remove material placed on the Alameda County refuse disposal site without a permit, or to apply for a permit within two weeks and directed plaintiff's attention to permit and enforcement provisions of the FWPCA (33 U.S.C. §§ 1344 and 1319).

On these issues defendants principally rely upon Webster v. Askew, 371 F.Supp. 733 (N.D.Fla.1973); Rincon v. Band of Mission Indians v. County of San Diego, et al., 495 F.2d 1 (9th Cir. 1974); United States v. Joseph G. Moretti, Inc., 478 F.2d 418 (5th Cir. 1973) and Toilet Goods Association v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); plaintiff principally relies upon Abbot Laboratories. v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Lake Carriers Association v. MacMullen, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); and Marsh v. County School Board or Roanoke County, Va., 305 F.2d 94 (4th Cir. 1962).

dustrial and agricultural waste (33 U.S.C. §§ 1362(12)(A) and 1362(6)).

The FWPCA is administered by the Environmental Protection Agency (EPA) through its Administrator (33 U.S.C. § 1251(d)) who ordinarily issues permits under 33 U.S.C. § 1342. There is, however, a special provision (33 U.S.C. § 1344), whereunder the Secretary of the Army, acting through the Corps of Engineers, is empowered to issue permits after notice and opportunity for public hearings, "for the discharge of dredged or fill material into navigable waters at specified disposal sites;" navigable waters are defined (33 U.S.C. § 1362(7)) as "the waters of the United States, including the territorial seas." Discharge of pollutants pursuant to such a permit from the Corps is one of the limited exceptions to 33 U.S.C. § 1311, which makes such discharge otherwise unlawful.

Under 33 U.S.C. § 1319(a)(3), whenever, on the basis of any information available to him the EPA Administrator finds that any person is in violation of 33 U.S.C. § 1311, he shall issue orders for compliance with 33 U.S.C. § 1311 or shall commence civil actions for appropriate relief; 33 U.S.C. § 1319 also provides both civil and criminal penalties for violation of 33 U.S.C. § 1311. (See 33 U.S.C. §§ 1319(c) and 1319(d)).

The Army Corps of Engineers, acting expressly under 33 U.S.C. § 1344 of the FWPCA, has adopted a Regulation, 33 C.F.R. 209.120, April 3, 1974, (See 39 F.R. 65, p. 12118)) defining the term "navigable waters of the United States" as "those waters of the United States which are subject to the ebb and flow of the tide" expressly referring, however, to Corps Regulation 33 C.F.R. 209.260 for a more complete definition.

Corps Regulation 33 C.F.R. 209.-260(k)(1)(ii), adopted September 16, 1972, provides that the regulatory jurisdiction of the Corps in coastal areas extends to the MHW line *except on the Pacific Coast where it extends to the MHHW line.*

Plaintiff does not contend that its activities are of a kind which would not be subject to the Corps' regulatory jurisdiction under the Rivers and Harbors Act of 1899 and/or the FWPCA if the activities were being conducted in an area below the MHW line; plaintiff contends only that the Corps' jurisdiction under either of these two Acts does not, and constitutionally cannot, extend to any of plaintiff's activities conducted on property shoreward of the MHW line.

The question, then, is simply whether Congress by its definition of the term "navigable waters," for the purposes of FWPCA Section 404 (33 U.S.C. § 1344) intended a departure from the traditional MHW line definition of navigable waters as laid down by the courts in cases interpreting the Rivers and Harbors Act of 1899 (see cases cited supra).

It has been recently held in United States v. Holland, 6 ERC 1388 (M.D.Fla. March 15, 1974) (also similarly in principle, United States v. Ashland Oil and Transportation Co., 364 F.Supp. 349 (W.D.Ky.1973)) that the FWPCA definition (33 U.S.C. § 1362(7)) of "navigable waters" as "waters of the United States" does in effect eliminate the traditional MHW line limitation on federal jurisdiction over such waters.

Further, as noted in *Holland,* supra, the legislative history of the 1972 amendments to the FWPCA (33 U.S.C. § 1362–(7)) indicates that it was the intent of Congress to give the term "navigable waters" "the broadest possible constitutional interpretation." Conference Report, Senate Report No. 92–1236, Sept. 28, 1972, Reprinted in Legislative History, Vol. 1, p. 327.

We conclude that the Congress, enacting the FWPCA, was exercising its powers under the commerce clause to combat pollution of the nation's waters; that water pollution unquestionably affects interstate commerce and that, therefore, it was a proper exercise of the commerce power to require permits for dredging or filling which are potential

causes of pollution of waters of the United States (Zabel v. Tabb, 430 F.2d 199, 203–204 (5th Cir. 1970)); that the exercise of the commerce power for that purpose is not limited by traditional "navigable waters" definitions; that, although the MHW line test may remain as a proper test for other purposes, e. g., obstructions to navigation under the Rivers and Harbors Act of 1899, that test does not limit federal regulatory power under the FWPCA.

█ We further conclude that the Regulations of the Corps (See 33 CFR 209.120 and 209.260, supra), further defining "navigable waters of the United States" as extending landward to the mean higher high water (MHHW) line for Pacific Coast purposes, is a reasonable interpretation of the Congressional definition, i. e., "waters of the United States."

█ For these reasons we further conclude that there is no merit to plaintiff's contention that this federal regulatory control over navigable waters for the purposes of the FWPCA is unconstitutional. See, *Holland*, supra, and Zabel v. Tabb, supra.

█ Plaintiff contends, however, that, since its property was originally granted to the State of California for purposes of reclamation by the United States under the Arkansas Swamp Act of 1850 (43 U.S.C. § 982) and was subsequently patented by the State to plaintiff's predecessors in interest, it is free from any federal regulation, citing Leovy v. United States, 177 U.S. 621, 20 S.Ct. 797, 44 L.Ed. 914 (1900).

We find no merit in this contention because that case merely held that the federal government failed to prove that the stream which had been reclaimed was a "navigable water" subject to federal control under any applicable definition.

█ Nor do we find any merit to plaintiff's contention that the Corps has surrendered its regulatory jurisdiction over areas of plaintiff's land shoreward beyond the MHW line. The record shows, not only the Corps' Public Notices of June 11, 1971 and January 18, 1972, and its Regulation of September 16, 1972, above referred to, but also its communications to plaintiff under dates of May 31, 1972, September 17, 1973, and November 5, 1973 (See supra, note 2) and its Regulation of April 3, 1974. Certainly this is timely assertion of the Corps' jurisdiction, especially insofar as its jurisdiction is claimed under the comparatively recent FWPCA amendments of October 18, 1972.

█ For the foregoing reasons we conclude that, since there is no genuine issue as to any material fact bearing on the question of the jurisdiction of the Corps under the FWPCA to issue permits for the discharge of dredged or fill material into navigable waters as defined in the FWPCA and the Corps Regulations, defendants' motion for a summary judgment should be granted to the extent of declaring that as a matter of law the Corps has jurisdiction under FWPCA, 33 U.S.C. § 1344, considered along with Sec. 1311, Sec. 1362(7) and 1319 and its Regulations 33 C.F.R. 209.-120 and 209.260, not only to issue permits, but to assert that jurisdiction by requesting or requiring applications for permits for any discharge of dredged or fill material into navigable waters of the United States, i. e., "waters of the United States," up to the mean higher high water (MHHW) line under pain of plaintiff's liability to the enforcement of 33 U.S.C. § 1311 as provided in 33 U.S.C. § 1319.

It is unnecessary at this time to determine whether plaintiff is in fact discharging dredged or fill material into navigable waters bayward of the mean higher high water (MHHW) line. We only declare that the Corps has the jurisdiction above described.

Since we have concluded that such jurisdiction is conferred upon the Corps by the FWPCA, it is unnecessary to determine at this time the extent of the

Corps' jurisdiction under the Rivers and Harbors Act of 1899.

A partial summary judgment is to be prepared by defendant in accordance with the views herein set forth.