**UNITED STATES of America, Plaintiff,**

**v.**

**Gerard ALLEYNE, Defendant.**

**No. 76 Civ. 1515 (VLB).**

United States District Court,
S. D. New York.

June 20, 1978.

Robert B. Fiske, Jr., U. S. Atty. by Anne Sidamon-Eristoff, Asst. U. S. Atty., New York City, for plaintiff.

Lorenzo F. Padilla, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

This action is before me on plaintiff United States' motion seeking summary judgment in an action alleging violation of laws for the "protection of waters" and "regulation of navigation and navigable waters."

I have determined, as appears below, that there is no substantial controversy with respect to certain material facts, and that they shall be deemed established pursuant to Rule 56(d), F.R.Civ.P., 28 U.S.C.A. (1971). I have also determined that a hearing is to be held 1) to consider whether the procedures followed by plaintiff in issuing a cease and desist order comported with due process; 2) to determine whether the procedures followed by plaintiff in determining that defendant would not be granted an after-the-fact permit comported with due process; and 3) to take evidence with respect to defendant's allegations that the law has been selectively enforced, as to him, for impermissible reasons.

## I.

■ Defendant Gerard Alleyne owns a marina located along the eastern shore of the Hudson River at Hastings-on-Hudson, Westchester County, New York. During the autumn of 1975, defendant caused fill material to be placed in the river along the shoreline, covering a bottom area of approximately 3,750 square feet (30′ by 125′). Defendant had neither applied for nor received any permit from the U.S. Army Corps of Engineers ("the Corps"), as required by federal law. This activity also placed defendant in violation of New York State law.

Under the Regulations, a cease and desist order shall be issued "[w]hen the District Engineer becomes aware of any unauthorized activity which is still in progress." 33 C.F.R. Section 209.120(g)(12)(i) (1976). Alleyne did engage in "unauthorized activity."

Upon learning of the fill activity, a representative of the Corps instructed the defendant to cease and desist that activity. The regulations mandate specific follow-up procedures to a cease and desist order, including an immediate investigation to ascertain the facts surrounding the unauthorized activity, solicitation of views of appropriate Federal, State and local agencies, and a request to the persons involved in the unauthorized activity to provide appropriate information on this activity. 33 C.F.R. Section 209.120(g)(12)(ii).[1] The District Engineer is to evaluate the information received and "formulate recommendations as to the appropriate administrative and/or legal action to be taken, . . ." *Id.* While the Corps investigated the facts and solicited views from appropriate agencies, it is not clear on the record before me whether the Corps, through the District Engineer or otherwise, requested information from Mr. Alleyne, the "person involved in the unauthorized activity," before taking the administrative and legal actions discussed below.

The Corps did consult with a number of federal and state agencies as to whether it should issue an "after-the-fact" permit and allow the unauthorized fill to remain, or

---

1. These procedures may or may not satisfy statutory and regulatory procedural due process requirements. However, I do not presently reach that issue.

whether it should take steps to have the fill removed as environmentally harmful.

Based on the recommendations of the several agencies and its own studies, the Corps decided that the fill should be removed. The Corps sought to have the defendant agree to remove the illegally placed fill, but he refused.

On March 31, 1976 plaintiff commenced this action, in which it charges defendant with violations of 33 U.S.C. Sections 403 and 1311 (1970) and seeks an order directing defendant to remove the fill. The district court has jurisdiction pursuant to 28 U.S.C. Section 1345 (1976) [2] and 33 U.S.C. Sections 406 [3] and 1319(b) (1970).[4]

Plaintiff originally moved for judgment on the pleadings before Judge Charles M. Metzner, contending that defendant had admitted all material facts necessary for a finding that a violation of Title 33, U.S.C. Sections 403, 1311 and 1344 had occurred. Defendant admits that he had caused fill material to be placed in the Hudson River and that he had no Corps permit allowing him to do so.

In opposition to the motion before Judge Metzner, defendant pointed out that the New York State Department of Environmental Conservation ("DEC") was concurrently conducting its own hearings to determine whether the defendant should be ordered to remove the fill material. Defendant had no New York State permit, and the State had already imposed on defendant a penalty of $200. Defendant further suggested that he would apply for an after-the-fact Corps permit. In a decision filed December 6, 1976, Judge Metzner denied plaintiff's motion for judgment on the pleadings, stating that the court would await the completion of administrative proceedings "rather than insert its judgment for that of a successive layer of experts." [5]

The State hearings have now been completed, and the State has determined that it will deny defendant an after-the-fact permit, and that it will require defendant to remove the fill material.[6]

To date, defendant has not applied for an after-the-fact permit from the Corps, be-

---

2. 28 U.S.C. § 1345. United States as plaintiff
Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

3. 33 U.S.C. § 406. Penalty for wrongful construction of bridges, piers, etc.; removal of structures
Every person and every corporation that shall violate any of the provisions of sections 401, 403, and 404 of this title or any rule or regulation made by the Secretary of the Army in pursuance of the provisions of section 404 of this title shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. And further, the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States.

4. 33 U.S.C. § 1319(b) Civil actions
The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) of this section. [i. e., for violations of Sections 1311, 1312, 1316, 1317 or 1318 or of a permit issued under Section 1342] Any action under this subsection may be brought in the district court of the United States for the district in which the defendant is located or resides or is doing business, and such court shall have jurisdiction to restrain such violation and to require compliance. Notice of the commencement of such action shall be given immediately to the appropriate State.

5. This case was reassigned to me.

6. The State hearings had been concluded in October, 1976, and thereafter the DEC hearing officer rendered his report, which recommended a) denial of a state after-the-fact permit; and b) issuance of an order directing defendant to remove the fill material. The report was concurred in and adopted by Commissioner Peter A. A. Berle on March 30, 1977.

cause the Corps has determined that it will not issue such a permit in this case.[7]

## II.

Under Rule 56, F.R.Civ.P., 28 U.S.C.A. (1971)[8], summary judgment is appropriate where the pleadings, affidavits and other papers filed show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

7. Affidavit of Steven Yandrich, filed May 13, 1977, at p. 4.

8. Rule 56. Summary Judgment

   (a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

   \* \* \* \* \* \*

   (c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

9. 33 U.S.C. § 403. Obstruction of navigable waters generally; wharves; piers, etc.; excavations and filling in

   The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location,

■ There is no issue as to the fact that defendant caused an obstruction to the navigable capacity of a navigable river of the United States. Therefore, as a matter of law defendant is in violation of 33 U.S.C. Section 403.[9]

■ Defendant is also charged with violation of 33 U.S.C. Section 1311.[10] Section 1311 prohibits discharge of any pollutant into navigable waters [11] unless there is compliance with certain other sections, one of which is Section 1344 [12]. Under these sec-

condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

10. 33 U.S.C. § 1311. Effluent limitations—Illegality of pollutant discharges except in compliance with law

    (a) Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.

11. 33 U.S.C. § 1362(6)

    (6) The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial municipal and agricultural waste discharged into water. This term does not mean (A) "sewage from vessels" within the meaning of section 1322 of this title; or (B) water, gas, or other material which is injected into a well to facilitate production of oil or gas, or water derived in association with oil or gas production and disposed of in a well, if the well used either to facilitate production or for disposal purposes is approved by authority of the State in which the well is located, and if such State determines that such injection or disposal will not result in the degradation of ground or surface water resources.

12. 33 U.S.C. § 1344. Permits for dredged or fill material

    (a) The Secretary of the Army, acting through the Chief of Engineers, may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites.

    (b) Subject to subsection (c) of this section, each such disposal site shall be specified for

tions the Corps has jurisdiction "not only to issue permits, but to . . . [request or require] applications for permits for any discharge of dredged or fill material into navigable waters of the United States, . . . ." *Leslie Salt Co. v. Froehlke*, 403 F.Supp. 1292, 1297 (N.D.Cal.1974). *See also P. F. Z. Properties, Inc. v. Train*, 393 F.Supp. 1370, 1381 (D.D.C.1975). A requirement of an application for a permit for the discharge of dredged or fill material into navigable waters is set forth explicitly in 33 C.F.R. Section 209.120(e)(2) (1976).[13] Thus, defendant violated Section 1311 when he caused fill to be placed into the Hudson River without first obtaining a permit.

### III.

Despite the clear factual violations, defendant has submitted several arguments in opposition to summary judgment.

1. *Damage to the environment.* Defendant alleges first that his action did not damage the environment.

■ Both federal and state administrative agencies have found that the fill placed into the water by defendant *is* damaging to the environment.[14] In any case, the United States need not show irreparable injury to obtain injunctive relief under 33 U.S.C. Sections 403 and 406. *See United States v. Stoeco Homes, Inc.*, 498 F.2d 597, 611 (3rd Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Shafer v. United States*, 229 F.2d 124, 128 (4th Cir.), *cert. denied*, 351 U.S. 931, 76 S.Ct. 788, 100 L.Ed. 1460 (1956).

2. *Intent as a prerequisite to the creation of an obstruction.* Defendant next argues against summary judgment on the ground that an injunction ordering removal of an obstruction placed in violation of Section 403 is not proper unless there was intent by defendant to create the obstruction. He urges that since he did not intend to violate any law, an injunction should not issue. Defendant cites *United States v. Bridgeport Towing Line, Inc.*, 15 F.2d 240 (D.Conn.1926), for the proposition that "creation of obstruction, as far as the remedy by injunction is concerned, means a conscious creation, not one brought about by accident or negligence." [15]

each such permit by the Secretary of the Army (1) through the application of guidelines developed by the Administrator, in conjunction with the Secretary of the Army, which guidelines shall be based upon criteria comparable to the criteria applicable to the territorial seas, the contiguous zone, and the ocean under section 1343(c) of this title, and (2) in any case where such guidelines under clause (1) alone would prohibit the specification of a site, through the application additionally of the economic impact of the site on navigation and anchorage.

(c) The Administrator is authorized to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas. Before making such determination, the Administrator shall consult with the Secretary of the Army. The Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection.

13. The regulations are applicable to discharge into coastal waters and coastal wetlands or into inland navigable waters contiguous or adjacent thereto as of the effective date of the regulations, which were promulgated prior to the time of defendant's activity. *See Leslie Salt Co. v. Froehlke, supra.*

14. The United States Fish and Wildlife Service, requested to comment by the Corps, reported that the fill had obliterated a shallow water zone and destroyed habitat suitable for the feeding and resting of the migratory anadromous fish in the Hudson River. The United States Environmental Protection Agency and the National Marine Fisheries Service also reported adverse ecological effects. DEC reported that the fill has restricted the normal flow of water in the area, increasing siltation, causing unnecessary and unreasonable damage to the fisheries and aquatic resources of the river.

15. Defendant's Memorandum of Law in Opposition to the Defendant's [sic] Motion for Summary Judgment, filed June 28, 1977, Point III at pp. 4–5.

■ Defendant misapprehends the concepts of "intent" and "conscious creation" in *United States v. Bridgeport Towing Lines, Inc., supra.* The court interpreted the terms "creation" and "obstruction" to encompass the foreseeable consequences of one's action:

> Not that it is necessary that the purpose be to create an obstruction, but that such a result is reasonably to be apprehended from the acts actually intended . . . wholly irrespective of whether or not there was a design to create an obstruction to navigation, . . .

*Id.* at 241. Defendant "intended" to create the obstruction, because it was reasonably foreseeable that placing fill in the river would obstruct navigation; it was a "conscious creation". Thus the fill discharged into the river is an "obstruction" within the meaning of Section 403.[16]

■ 3. *Collateral estoppel and res judicata.* Defendant urges that the federal government may not proceed because of doctrines of collateral estoppel and res judicata. He contends that plaintiff was a party in the state administrative proceedings and so is estopped from bringing this action.

However, at the beginning of the state hearing, Hearing Officer Robert S. Drew made it clear that the federal government was not involved and that the state agency, in holding its hearing, did not purport to bind the federal government:

> I should say that any project of this nature involving filling of land under water, land in the Hudson River, the U.S. Army Corps of Engineers also has jurisdiction and this hearing is only to consider the action by the Department of Environmental Conservation and this hearing today is independent of any procedures or actions that may be undertaken by the U.S. Army Corps of Engineers.[17]

Plaintiff was not a party to the state action and is not estopped from bringing this action.

4. *The doctrine of abstention.* When the State of New York denied defendant's application for a state after-the-fact permit, defendant sought judicial review of the administrative determination pursuant to Article 78, N.Y.CPLR. The state court denied defendant's application, without prejudice to its renewal. While defendant has not yet refiled an Article 78 proceeding, he expresses an intent to do so. He asks that this court abstain, pending state court review of the denial of his application for a state after-the-fact permit.

■ Abstention is appropriate in the following categories of cases: 1) cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law; 2) cases where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; and 3) cases where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal convictions, state nuisance proceedings antecedent to criminal prosecution, or collection of state taxes. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–16, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and cases cited therein. The case before me does not fall within any of these categories.

■ The only other rationale for abstention in this case stems from the "General Policies for Evaluating Permit Applications" set forth at 33 C.F.R. Section 209.-

---

**16.** *United States v. Joseph G. Moretti, Inc.,* 478 F.2d 418, 429 (5th Cir. 1973)

> "In light of *Zabel v. Tabb,* 5 Cir. 1970, 430 F.2d 199, 207 and *United States v. Perma Paving Co.,* 2 Cir. 1964, 332 F.2d 754, any argument that the filling of navigable waters does not reduce navigable capacity of the filled waterway and thereby constitute an

obstruction within the meaning of § 403 borders on the frivolous."

**17.** Transcript of Hearing, State of New York, Department of Environmental Conservation, In the Matter of the Determination of Whether to order removal . . . of fill placed in waters of this State by Jerry Alleyne. March 10, 1976, pp. 5–6.

120(f) (1976). Pursuant to subparagraph (3) thereof, federal authorities will not issue a permit if a parallel permit has been denied by a state. If the state denial is under reconsideration, the federal authorities will not act for 90 days, to provide an opportunity for the applicant to resolve the problems with his state permit. If there is no resolution after 90 days, the federal application will be denied. Obviously the "abstention" contemplated by this regulation is administrative and not judicial: at any rate, the defendant has waited far in excess of 90 days to refile his Article 78 proceeding or seek resolution through other means. Abstention on the basis of 33 C.F.R. § 209.-120(f)(3) is not warranted.

Thus none of the above considerations suggests any basis for not proceeding herein. I find, therefore, pursuant to Rule 56(d), F.R.Civ.P., 28 U.S.C.A. (1971),[18] that the facts set forth in Part II of this opinion are not in controversy and are deemed established.

### IV.

Defendant has not applied for a federal after-the-fact permit because, as indicated above, the Corps has already determined that one would not issue. Defendant alleges that this determination, without notice and a hearing, constitutes arbitrary and capricious action, in violation of his rights to due process under the statute and regulations promulgated thereunder.

The appropriate procedure to challenge such administrative action is set forth in Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706 (1977). Although defendant has not specifically alleged violation of Section 706, his contentions are set forth in his papers, and in accordance with liberal rules of pleading I shall address the issue.

Defendant cites Section 1344 of Title 33 [19] for his argument that he is entitled to notice and hearing in connection with an application for an after-the-fact permit. As discussed below, the notice and hearing provisions of Section 1344 and regulations thereunder are addressed to objectors to a permit application, not to the applicant. However, the regulations do provide safeguards for applicants which are relevant here.

The procedures to be followed with respect to "activities performed without proper authorization" are set forth at 33 C.F.R. Section 209.120(g)(12) (1976). Pursuant to subparagraph 209.120(g)(12)(iii) "processing and evaluation of applications for after-the-fact authorizations . . . will in all other respects [20] follow the standard procedures of this regulation."

The standard procedures are set forth at 33 C.F.R. Section 209.120(i)(1) (1976). Pursuant to subparagraph 209.120(i)(1)(i), the District Engineer, upon receipt of an application,[21] must acknowledge receipt, review

---

**18.** Rule 56(d)

Case Not Fully Adjudicated on Motion. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**19.** See note 12, *supra*.

**20.** The phrase "in all other respects" refers to the fact that other procedures are delineated in subsections (i) and (ii). These procedures, which apply when a cease and desist order is issued, have been discussed in Part I of this memorandum order.

**21.** 33 C.F.R. Section 209.120(h)(2)

(2) Generally, the application must include a complete description of the proposed activity, which includes necessary drawings, sketches or plans, the location, purpose and intended use of the proposed activity; scheduling of the activity; the names and addresses of adjoining property owners and the location and dimensions of adjacent structures; and the approvals required by other Federal,

the application for completeness and obtain from the applicant any additional information he deems necessary for further processing.

Public notice of the proposed application is posted or published in the vicinity of the site of the proposed work, and is sent to concerned federal and state agencies and organizations and to any other interested parties, including the applicant. Section 209.120(i)(1)(ii). Section 209.120(j)(1) clarifies the purpose of the public notice requirement, "[t]he public notice is the primary method of advising all interested parties of the proposed activity for which a permit is sought and of soliciting comments and information necessary to evaluate the probable impact on the public interest." Where, as here, the activity involves discharge of fill material into navigable waters, the public notice must include the statement that "[a]ny person who has an interest which may be adversely affected by the issuance of a permit may request a public hearing." Section 209.120(j)(1)(x).

"[A] lack of response [to the public notice] will be interpreted as meaning that there is no objection to the application." Section 209.120(j)(2). Thus it is clear that defendant has no statutory interest in, or right to, notice and a hearing. To the con-

interstate, State or local agencies for the work, including all approvals or denials already made.

\* \* \* \* \* \*

(ii) If the activity includes the discharge of dredged or fill material in the navigable waters or the transportation of dredged material for the purpose of dumping it in the ocean waters, the application must include the source of the material, a description of the type, composition and quantity of the material, the method of transportation and disposal of the material, and the location of the disposal site. Certification under section 401 of the Federal Water Pollution Control Act is required for such discharges into navigable waters. In addition, applicants for permits for these activities are required to pay a fee of $100 per application if the quantity of the material to be discharged in navigable waters or to be dumped in ocean waters exceeds 2500 cubic yards; if the quantity of material is 2500 cubic yards or less, the fee is $10 per application.

trary, defendant would hope that no public hearing was requested.

However, the regulations do afford the applicant an opportunity to submit arguments in addition to those submitted with his application. Pursuant to Section 209.120(i)(1)(iii), the District Engineer must consider all comments received in response to the public notice and, of special significance here, must give the applicant "the opportunity to furnish the District Engineer his proposed resolution or rebuttal to all objections from Government agencies and other substantive adverse comments before final decision will be made on the application."

▆ Since there was no public notice of any proposed after-the-fact permit in this case, no "objections" were submitted in response to such notice. However, the Corps had in its possession materials, from government agencies, objecting to defendant's activity and recommending removal of the fill. Nothing in the record before me indicates that defendant ever was afforded an opportunity to rebut the objections made by government agencies in this case. If this is true, plaintiff has not complied with the due process protections for after-the-fact permit applications prescribed by the statute and regulations.[22] I find that an

22. If defendant in fact was not afforded an opportunity to rebut objections, the Corps may argue that for it to pursue rebuttal procedures with respect to such a permit would have been an empty formality, and that the information it requested and received other than from the defendant was dispositive.

However, I agree with the principle expressed in *United States v. Joseph G. Moretti, Inc.*, 478 F.2d 418, 431 (5th Cir. 1973), that defendant is entitled to present his case and to have it processed seriously and fairly, and that reference of the matter to the United States Attorney does not release the Corps of its obligations:

Whatever difficulties [defendant] may face in trying to persuade those authorities that he should have an after-the-fact permit he is entitled to have that application processed fairly and diligently with an opportunity as permitted under the regulations to present supporting data, facts and argument as to why such relief should be granted.

evidentiary hearing is necessary to dispose of this issue.

As stated above, it is unclear also whether and to what extent the Corps respected defendant's right to have an opportunity to be heard with respect to the Corps' determination of what action should follow the cease and desist order which it issued,[23] and whether the procedure which the Corps followed afforded due process protections comparable to those established for an after-the-fact permit application. I find, therefore, that a hearing is necessary with respect to this matter.

## V.

In his opposing papers, defendant has raised an additional issue which necessitates further court proceedings. He has alleged selective enforcement of the state and federal laws prohibiting fill and discharge.[24]

■ To sustain a defense of selective enforcement, defendant must make a prima facie showing of "intentional and purposeful discrimination." He must establish not only that plaintiff has proceeded against him and not against others similarly situated, but also that he was selected as an enforcement target for constitutionally impermissible reasons:

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge

against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination."

*United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).

■ Defendant alleges that other parties in the area who have discharged fill into the river have not been prosecuted. The government has not disputed this claim of lack of prosecution against others.[25]

■ As to the second prong of the standard set forth in *United States v. Berrios, supra*, defendant, a black man, contends that he was discriminatorily selected for enforcement because of his race. He states that the other parties in his area who have not been prosecuted for violations are white. Apparently, defendant is the only black person in his area who is discharging fill, and he has submitted photographs portraying allegedly illegal discharge of fill into the river by white people adjacent to his property.[26]

These allegations, if proven, do establish a defense of illegal selective enforcement by federal authorities. I find that an evidentiary hearing is warranted to afford defendant the opportunity to substantiate his claims. *See United States v. Ojala*, 544 F.2d 940, 944 (8th Cir. 1976).

SO ORDERED.

---

**23.** *See* 33 C.F.R. Section 209.120(g)(12)(ii) (1976), discussed in Part I.

**24.** While defendant's allegations of selective enforcement were not presented as a formal motion or defense, I shall consider them. *See United States v. Oaks*, 508 F.2d 1403 (9th Cir. 1974).

**25.** It must be stressed that at this juncture the court is concerned solely with the federal actions and with the possibility of selective enforcement by federal authorities. The issue of alleged racial discrimination by state officials is not before me. Moreover, selective enforcement of state law by state officials has no

bearing on the enforcement of a federal statute properly applied.

**26.** Apparently to bolster his claim of racial discrimination, defendant submits examples of other discriminatory activity, although he does not ascribe these activities to plaintiff. Thus defendant has submitted copies of newspaper articles suggesting that he has been subjected to racial discrimination in his attempts to obtain housing in Hastings-on-Hudson, where his marina is located. The articles also report on vandalism to the marina and tennis club itself, although racial discrimination is not specifically suggested as the motivation for that vandalism.