**John BUTTREY and John Buttrey Developments, Inc., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, et al., Defendants-Appellees.**

**No. 81–3649.**

United States Court of Appeals, Fifth Circuit.

Nov. 8, 1982.

Deutsch, Kerrigan & Stiles, Charles K. Reasonover, New Orleans, La., for plaintiffs-appellants.

Alfred P. Holmes, Jr., U. S. Army Corps of Engineers, Mobile, Ala., Kay Richman, Anne S. Almy, Appellate Section, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before CLARK, Chief Judge, POLITZ and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Plaintiffs-Appellants John Buttrey and John Buttrey Developments, Inc., are developers of a subdivision in Slidell, Louisiana, known as Magnolia Forest. On May 5, 1980, the United States Army Corps of Engineers issued a cease and desist order advising Buttrey that his placement of a fill in a wetland area was regulated by the Corps and that initiating such work without a permit violated section 404 of the Clean Water Act, 33 U.S.C. § 1344 (Supp. IV 1980).[1] On November 21, 1980, the Corps issued another cease and desist order advising Buttrey that his construction of a levee and dredging in a wetland area adjacent to the Morgan River were similarly regulated by the Corps and that initiating such work without a permit violated section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403 (1976), and section 404 of the Clean Water Act.

In response to these cease and desist orders, and to alleged Corps surveillance, unannounced inspections and presence, Buttrey filed a complaint for declaratory and injunctive relief on January 21, 1981. Count I of the complaint alleged that "Con-gress' grant of jurisdiction to the United States Army Corps of Engineers, over the private property and private activities of United States citizens is in violation of the United States Constitution" and that "the United States Army's entry onto plaintiffs' property and surveillance of plaintiffs activities, under the circumstances described herein, violate plaintiffs' constitutional rights." Counts II and III related to the merits of the specific cease and desist orders, count IV challenged the legality of the Corps' inspection of Buttrey's property and surveillance of his activities, and count V alleged unlawful refusal by the Corps to make its files relating to Buttrey available to him.

On August 14, 1981, Buttrey filed a motion for summary judgment on the issue of the Corps' lack of jurisdiction under section 404 and the illegality of the cease and desist orders issued. The Corps, on August 20, 1981, filed a motion for summary judgment on count I and a motion to dismiss counts II through V. Following an oral hearing on these cross-motions, the district court granted the Corps' motion for summary judgment on count I,[2] denied the Corps'

1. Section 404, 33 U.S.C. § 1344, provides, in pertinent part:

   The Secretary may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites.

2. In granting the Corps' motion, the district court stated:

   [P]erhaps one of the first functions that the United States Government undertook in even its very infancy was the improvement of navigable waterways, followed by the expansion of flood control. This has, historically a civil function, been assigned to the United States Corps of Engineers by the Congress. Indeed there exists within the United States Army Corps of Engineers a civil functions division. And if the Court's memory is correct, the appropriations provided by the Congress to the Corps of Engineers for these functions are characterized as appropriations, Army Corps of Engineer civil functions.

   The Court believes that the exercise of the power of the Congress to control floods and provide flood control works emanates from the commerce clause of the Constitution, the very same clause which finds, and upon which is founded the Government's authority in this instance, to attempt to regulate and deal with navigable waters and adjacent wetlands.

   Therefore, the Court can perceive no difference insofar as the source of the power is concerned between such things as flood works, which have historically been performed by the Corps of Engineers under the commerce clause, and these functions which have been assigned by the Congress to the Corps of Engineers pursuant to power granted it under the commerce clause. Therefore, the Court finds no impropriety in this particular aspect of the civil arm of a military agency, the Corps of Engineers engaging in a civil function. And whether that civil function would be the exercise of flood control functions under the commerce clause, whether it's in the exercise of Section 10 permitting power under the River & Harbor Act, or Section 403 and 404 authority, or either or both under the Federal Water Pollution Control Act and Clean Water Act, the Court sees no essential difference.

   This is not the kind of thing which would offend the historically dominant and constitutionally required separation of military and civil power, and the supremacy of the civil power over the military power; and, accordingly, the motion for summary judgment by

motions to dismiss counts II through IV and dismissed count V as moot.[3]

On October 13, 1981, the district court, pursuant to Fed.R.Civ.P. 54(b), ordered that the clerk of the court enter a final judgment upon the order dismissing count I of the complaint, certifying that there was no just cause for delay. Buttrey appeals that judgment.[4] The single issue on appeal is the constitutionality of Congress' delegation of the authority embodied in section 404 of the Clean Water Act to the Corps of Engineers, a part of the United States Army.

Section 404 of the Clean Water Act authorizes the Secretary of the Army, through the Chief of Engineers, to regulate the discharge of dredged or fill material into the nation's navigable waters. See note 1 supra. Buttrey contends that section 404 of the Clean Water Act unconstitutionally permits the military to assert authority and control over civilians. He contests neither Congress' power to pass legislation under the commerce clause aimed at curbing the nation's pollution problems, nor the delegation of authority to the Corps under section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403 (1976).[5] He challenges only the fact that section 404 delegates jurisdiction to "a part of the military," as a regulatory agency.

Buttrey argues that Congress' total power with regard to the military can be found in article I, section 8, of the United States Constitution. Nowhere, he argues, is Congress given the power to use the Army to enforce compliance with laws or regulations not essential or necessary to the purpose of an Army. In addition, he argues that such legislation is contrary to what Justice Earl Warren once referred to as "the American tradition of the separation of the military establishment from, and its subordination to, civil authority." Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 183 (1962).

■ The provisions of article I, section 8, of the Constitution give Congress the power "to provide for the common defense, to declare war, to make rules for the Government and regulation of the land and naval forces, and to raise and support armies." See Warren, supra, at 185. Buttrey cites several cases limiting the authority which Congress can extend to the military under these "war power" provisions of the Constitution.[6] The authority of the Corps to reg-

the plaintiff is denied. The motion for summary judgment on this count by the defendant is granted.

3. The Corps produced the requested documents after the filing of the complaint.

4. This case was consolidated on appeal with Buttrey v. United States, 690 F.2d 1170 (5th Cir. 1982).

5. Section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403 (1976), provides:
   The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or ca-

pacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

   While the Clean Water Act delegated permit authority with respect to other discharges of pollutants into the Nation's navigable waters to the EPA, section 404 of the Clean Water Act retained permit authority with respect to dredged or fill material in the Corps, extending the Corps' jurisdiction with respect to such operations as far as possible. See S.Rep.No. 95–370, 95th Cong., 1st Sess. 75, reprinted in 1977 U.S.Code Cong. & Ad.News 4326, 4400.

6. See O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); McElroy v. United States ex rel. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1969); Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960); Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955); Ex

ulate the discharge of dredged or fill material into the nation's navigable waters, however, is not found in these war power provisions, but in the commerce clause.[7] The necessary and proper clause, U.S.Const. art. I, § 8, cl. 18, "authorizes Congress 'to exercise its best judgment in the selection of measures, to carry into execution the constitutional powers of the government,' ... and 'avail itself of experience, to exercise its reason, and to accommodate its legislation to circumstances,' " *Atkins v. United States,* 556 F.2d 1028, 1061 (Ct.Cl.1977) (quoting *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 415–20, 4 L.Ed. 579 (1819)). Buttrey has conceded for purposes of this appeal that the end of this legislation—"to restore and maintain the chemical, physical, and biological integrity of the Nation's waters"—is legitimate. 33 U.S.C. § 1251(a) (1976). He has also conceded the appropriateness of the means, except to the extent that it employs the Corps of Engineers in the administration of the program. Recognizing the Corps' expertise and existing administrative machinery, Congress chose administration by the Corps as the means to achieve its legislative end.[8] The end being legitimate and the means being plainly adapted to that end, we are left only with the question whether the administration of the permit program by the Corps comports with the letter and spirit of the Constitution.

▌ Two facts distinguish this case from those relied on by Buttrey to argue that Corps jurisdiction is unconstitutional. The first is that the constitutional authority for this legislation is the commerce clause, not the war power clauses; the second is that administration by the Corps does not infringe upon any other provisions of the Constitution. Because we find that the del-

egation of authority attacked here has a source in the Constitution independent of the war powers clauses and does not infringe upon any constitutional interests, we conclude that it is constitutional.

Most of the cases Buttrey cites address the military's court-martial jurisdiction. In *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), for example, the government argued that a 1950 Act of Congress allowing the trial of ex-servicemen (for certain offenses committed while in the service) by courts-martial was a valid exercise of the power of Congress to make rules for the government and regulation of the land and naval forces, as supplemented by the necessary and proper clause. The Supreme Court, however, held that the power granted Congress to make rules to regulate the land and naval forces restricts court-martial jurisdiction to persons who are actually members or part of the armed forces. *Id.* at 15, 76 S.Ct. at 4. The Court stated:

> There is a compelling reason for construing the clause this way: any expansion of court-martial jurisdiction like that in the 1950 Act necessarily encroaches on the jurisdiction of federal courts set up under Article III of the Constitution where persons on trial are surrounded with more constitutional safeguards than in military tribunals.

*Id.* In *Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), the Supreme Court similarly held that the wives of servicemen overseas could not be tried by military authorities. The Court held that the power granted in article, I, § 8, cl. 14 of the Constitution does not extend to civilians. Here, again, the Court stressed the encroachment on other provisions of the Constitution:

*Parte Milligan,* 71 U.S. (4 Wall) 2, 18 L.Ed. 281 (1866).

7. *See, e.g., Leslie Salt Co. v. Froehlke,* 403 F.Supp. 1292, 1296 (N.D.Cal.1974), *reversed and modified on other grounds,* 578 F.2d 742 (9th Cir. 1978) ("[T]he Congress, enacting the [Clean Water Act], was exercising its powers under the commerce clause. . . .").

8. In presenting the conference committee report to the Senate, Senator Muskie noted:

> The Conferees were uniquely aware 'of the process by which dredge and fill permits [under section 10 of the Rivers and Harbors Act of 1899] are presently handled and did not wish to create a burdensome bureaucracy in light of the fact that a system to issue permits already existed.

118 Cong.Record 33,699 (1972).

Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts, and, more important, acts as a deprivation of the right to jury trial and of other treasured constitutional protections. Having run up against the steadfast bulwark of the Bill of Rights, the Necessary and Proper Clause cannot extend the scope of Clause 14.

*Id.* at 21, 77 S.Ct. at 1233. The two considerations referred to above—the constitutional source of the delegation and its infringement on constitutional protections—distinguish these cases from the one before us.

Another case Buttrey heavily relies upon, *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), is also distinguishable. There, the respondents had sought declaratory and injunctive relief on their claim that their rights were being invaded by the Department of the Army's alleged surveillance of lawful and peaceful civilian political activity. The Supreme Court held that there was no justiciable controversy where the first amendment chilling effect was allegedly caused not by any specific action of the Army against respondents, but only by the existence and operation of the intelligence gathering and distributing system, which was confined to the Army and related civilian investigative agencies. While recognizing that *Laird* was dismissed for lack of a justiciable controversy, Buttrey argues that language in the majority opinion, and in Justice Douglas' dissent, is particularly important. While the majority did refer to the "traditional and strong resistance of Americans to any military intrusion into civilian affairs," *id.* at 15, 92 S.Ct. at 2326, nothing in the opinion suggests that the type of extension of authority involved in this case would come within that tradition. Justice Douglas spoke of the extension of the military's war powers to military surveillance over civilians, *id.* at 17, 92 S.Ct. at 2327, and the purpose and effect of the system of surveillance to deter the exercise of rights of political expression, protest, and dissent, *id.* at 25, 92 S.Ct. at 2331. Again these factors distinguish the case before us. Buttrey has pointed to no constitutional protections infringed upon by the administration of the program by the Corps. The Corps' activities do not encroach upon the jurisdiction of Article III courts, and Buttrey does not allege that they chill first amendment rights or any other constitutionally protected interests.

We refuse to ignore the unique nature of the Corps, described by the district court as the civil arm of a military agency, and the expertise of the Corps developed in its performance of civil functions relating to the preservation and development of the nation's water resources for over 150 years. The Corps is limited in its authority to that which Congress provides and remains subject to revocation of that authority at any time at the will of Congress. Judicial review is available in the civil courts under the same standard of review that would apply to any other agency administering such a program. Civilian control is also effected by 10 U.S.C. § 3013, which requires that the Assistant Secretary of the Army for Civil Works, whose principal duty is supervision of Army functions relating to water resources conservation and development, "be appointed from civilian life by the President, by and with the advice and consent of the Senate."

■ Our holding is of course limited to the particular facts of this case—the delegation of the dredge and fill permit authority of section 404 of the Clean Water Act to the Army Corps of Engineers. In stressing that fact, we repeat the words of the Supreme Court found at the close of the majority opinion in *Laird v. Tatum, supra,* at 15–16, 92 S.Ct. at 2326–27:

[W]hen presented with claims of judicially cognizable injury resulting from military intrusion into the civilian sector, federal courts are fully empowered to consider claims of those asserting such injury; there is nothing in our Nation's history or in this Court's decided cases, including our holding today, that can properly be seen as giving any indication that actual threatened injury by reason of unlawful activities of the military would go unnoticed or unremedied.

AFFIRMED.